UNITED STATES OF AMERICA
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

**DANIEL J. AISENBERG**
    Plaintiff,

v.                                                              **COMPLAINT**

**DAVID P. STEINER, POSTMASTER GENERAL,**
**UNITED STATES POSTAL SERVICE,**
    Defendant.

Plaintiff, Daniel J, Aisenberg, by and through his attorney, Marc J. Levy, Esquire, respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff, an employee of the United States Postal Service brings this action in response to the discriminatory actions taken against him by the United States Postal Service.

2. Plaintiff brings this action pursuant Title VII of the Civil Rights Acts of 1964 ("Title VII").

## THE PARTIES

3. The plaintiff, Daniel J. Aisenberg ("Plaintiff" or "Aisenberg"), is a resident of Massachusetts who resides at 2 Pilgrim Road, Needham, Norfolk County, Massachusetts.

4. At all times relevant to this charge, Aisenberg has been an employee of the United States Postal Service ("Defendant" or USPS") working for the United States Postal Service out of the Dorchester-Fields Corner facility at 18 Clayton Street, Dorchester, Suffolk County, Commonwealth of Massachusetts.

5. Defendant USPS at all times hereinafter mentioned, was and is a quasi-agency within the Federal Government. David P. Steiner is the current Postmaster General of the United States Postal Service.

6. At all times relevant to this charge, the USPS has been Aisenberg's "employer".

## JURISDICTION AND VENUE

7. The Court has original jurisdiction over Plaintiff's federal law claim pursuant to 28 U.S.C. §§ 1331 & 1343.

8. Venue is proper pursuant to 28 U.S.C. § 1391.

9. The jurisdictional prerequisites of 29 C.F.R. Part 1614 have been satisfied.

10. Aisenberg filed his first complaint with the USPS's EEO Office on April 5, 2024. That Plaintiff is identified as Agency No. 4B-020-0041-24; EEOC Case No.: 520-2025-00034X.

11. On September 23, 2025, the USPS issued a Final Agency Decision on the Plaintiff's first EEO complaint.

12. Aisenberg is afforded the right to file a complaint with the United States District Court within 90 days of that Final Agency Decision.

13. Where this complaint has been filed within 90 days of the Final Agency Decision of September 23, 2025, the administrative requirements with respect to the first

complaint have been met and the filing of this complaint is timely.

14. Aisenberg filed his second complaint with the USPS's EEO Office on October 15, 2024. That Plaintiff is identified as Agency No. 4B-020-14372-24; EEOC Case No.: 520-2025-00409X.

15. Aisenberg is afforded the right to file a complaint with the United States District Court if after the passing of 180 days from the filing that second complaint with the USPS's EEO Office on October 15, 2024 a Final Agency Action has not yet been taken.

16. The Agency has yet to take a Final Agency Action on Aisenberg's second EEO complaint which was filed on October 15, 2024.

17. Where more than 180 days have passed without a Final Action having been taken, the administrative requirements with respect to the second complaint have been met and the filing of this complaint is timely.

## FACTS

18. At all times relevant to the issues in this complaint, Plaintiff was employed as a Full Time City Carrier at the Fields Corner Station (FCS) in Dorchester, Massachusetts.

19. Plaintiff is a Caucasian Jewish male who wears his hair in dreadlocks and has numerous visible tattoos.

20. Fields Corner, Dorchester, Massachusetts, is a neighborhood in the city of Boston which boasts a very diverse racial and ethnic population where African American, Asian American, and Latino Americans make up a majority of the residential

population. While USPS workforce at the Fields Corner, Dorchester facility is reflective of this diverse population, the management officials involved in this matter do not.

21. At all times relevant to this matter, Plaintiff was supervised by Supervisor, Customer Services (SCS) Michelle Morrison, non-Jewish Caucasian female.

22. At all times relevant to this matter, Plaintiff was supervised by Manager, Customer Services (MCS) Kerrianne M. Beatrice; non-Jewish Caucasian female.

23. At all times relevant to this matter, Plaintiff was supervised by Supervisor, Customer Services (SCS) Amanda Cuddy, non-Jewish Caucasian female.

24. At all times relevant to this matter, Plaintiff was supervised by Supervisor, Customer Services (SCS) Gregory J. Maguire, non-Jewish Caucasian male.

25. Plaintiff alleges that Supervisor, Customer Services (SCS) Michelle Morrison; Manager, Customer Services (MCS) Kerrianne M. Beatrice; SCS Amanda Cuddy; and SCS Gregory J. Maguire (hereinafter collectively referred to as "management") have intentionally subjected him to discriminatory harassment based on race, ethnicity, religion, sex and retaliation (prior eeo activity).

26. This discriminatory harassment has occurred continually, consistently and repeatedly over the last two plus years since May of 2023.

27. In May 2023, management told Plaintiff that he was not a "normal white person".

28. On or around May 20, 2023, management singled Plaintiff out and made Plaintiff the focus of a service talk.

29. Since the May 20, 2023 service talk, management has told Plaintiff not to wear headphones while working in the office, while on January 5 and 10, 2024;

March 20, 27, and 29, 2024; and April 3, 2024 others were allowed to play loud music and wear headphones.

30. On May 25, 2023, management took away Plaintiff's office keys without valid reason or explanation.

31. On May 25, 2023 and March 30, 2024, management assigned additional, excessive, parcels to Plaintiff's route to deliver.

32. On June 5, 2023, management told Plaintiff they would investigate his safety concerns raised but did not actually do so.

33. On various dates to be specified in July 2023 through October 2023, management denied Plaintiff overtime with justification, cause and in violation of regulations while at the same time approving it for others outside his protected classes.

34. On or around September 25, 2023, management failed to do a thorough investigation into an incident Plaintiff was involved in with a customer, which lead to Plaintiff receiving discipline on or around September 30, 2023.

35. On or around September 27, 2023, management denied Plaintiff use of the restroom.

36. On September 30, 2023, Plaintiff was issued a Proposed Seven Day Suspension without valid justification or cause.  This discipline was later rescinded/expunged when management was forced to confront the fact it was wholly unsupported by any evidence as Plaintiff contended from the beginning.

37. On or around November 29, 2023, management was supposed to move Plaintiff's carrier case away from a harassing coworker, but Plaintiff's case was not moved until January 27, 2024.

38. On or around November 29, 2023, December 12 and 22, 2023, and other possible dates, management failed to ensure Plaintiff's safety by allowing his supervisor to approach him, hand items to him, and speak directly to him.

39. On or around November 29, 2023, management accused Plaintiff of staring at his coworkers and on or around December 6, 2023, management instructed him not to "look" at his coworkers.

40. On November 30, 2023 and December 1, 5, 6, 11, 12, 13, and 14, 2023; and January 24, 2024; February 8, and 22, 2024; March 13, 15, 18, and 21, 2024; and April 5 and 10, 2024; and June 14, 2024, management told Plaintiff that he could not use hampers in the office despite others being allowed to do so.

41. On or around December 6, 2023, management instructed Plaintiff not to wear sunglasses, while others were allowed to wear sunglasses in the office.

42. On December 6, 7 and 21, 2023; February 7 and 22, 2024; and June 7, 2024, management stared at Plaintiff and listened in on his conversations with his union steward and coworkers.

43. On December 27, 2023, the Plaintiff made his initial contact with the USPS's EEO Office.

44. On January 10, 2024, management informed Plaintiff's coworkers that he filed an EEO complaint.

45. On or around January 18 and 19, 2024, management shouted out on the workroom floor, "Rudy, come get your keys", referring to Plaintiff as Rudy, meaning "rude".

46. On January 20, 2024; February 7 and 24, 2024; March 28, 2024; April 20, 2024;

and June 29, 2024, management told Plaintiff that he needed to pick up keys at another office to deliver on Sunday.

47. On April 5, 2024, the Plaintiff filed his first formal EEO Complaint.

48. On or around July 10, 2024, July 22, 2024, July 24, 2024, July 25, 2024, July 30, 2024, August 17, 2024, August 23, 2024, and August 24, 2024, and other possible dates, management failed to assign Plaintiff overtime and vehicles fairly and consistently in accordance with regulations and policy, allowing others to take the vehicles before Plaintiff, and making Plaintiff wait until overtime was assigned to request a vehicle.

49. On or around July 30, 2024, management denied Plaintiff use of a postal vehicle, forcing Plaintiff to have to do street time overtime.

50. On August 6, 2024, the Plaintiff initiated contact with the Agency's EEO Office again.

51. On or around September 7, 2024, September 10, 2024, September 13, 2024, September 14, 2024, and September 17, 2024, and other possible dates, management changed the way Plaintiff's overtime was to be assigned, and had a witness at their desk while they assigned Plaintiff overtime.

52. On or around September 9, 2024, and September 13, 2024, management announced on the workroom floor in front of Plaintiff's coworkers that part of Plaintiff's overtime was for his EEO meeting.

53. On or around September 21, 2024, management would not allow Plaintiff to have a key to the building.

54. On October 8, 2024, the Plaintiff filed his second formal EEO Complaint.

### FIRST CLAIM FOR RELIEF
(RACE/ETHNICITY/RELIGION/SEX/REPRISAL DISCRIMINATION – HOSTILE WORK ENVIRONMENT)

55. Plaintiff repeats and re-alleges each and every allegation contained herein.

56. Plaintiff was subjected to a hostile work environment by Defendant based on his race/ethnicity/religion, sex and in reprisal for engaging in protected EEO activity, as stated above.

### SECOND CLAIM FOR RELIEF
(RACE/ETHNICITY/RELIGION/SEX/REPRISAL DISCRIMINATION – DISPARATE TREATMENT)

57. Plaintiff repeats and re-alleges each and every allegation contained herein.

58. Plaintiff was subjected to disparate treatment by the Defendant with regard to terms and conditions of his employment, including but not limited to work assignments, overtime and discipline, based on his race/ethnicity/religion sex and in reprisal for engaging in protected EEO activity, as stated above.

**WHEREFORE,** the Plaintiff demands the following relief:

a. That this Court enter judgment for the Plaintiff against the Defendant for all compensatory, emotional and psychological damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action in an amount to be determined by a jury;

b. That this Court award the Plaintiff all costs and expenses associated with this

    lawsuit;

c.     That this Court award the Plaintiff all attorney fees associated with this lawsuit;

d.     That this Court award the Plaintiff interest on any and all judgments awarded in this lawsuit; and

e.     For all other relief as this Court deems meet and just.

**The Plaintiff demands a jury trial on all issues triable by a jury.**

Respectfully Submitted,
The Plaintiff,
Daniel J. Aisenberg,
By his attorney,

*/s/ Marc J. Levy*
Marc J. Levy, Esquire
215 Boston Post Road, Building B Suite 3
Sudbury, MA 01776
Tel: 508-359-8600
Fax: 508-359-8601
Email: marclevy@marclevyesq.com
B.B.O. #644826

Dated: 12/17/2025